578 A.2d 283
**Martin COOK and William Darby**
v.
**STATE of Maryland.**
No. 1176, Sept. Term, 1989.
Court of Special Appeals of Maryland.
Aug. 30, 1990.
Certiorari Denied Jan. 4, 1991.

124

Clarence W. Sharp, Assigned Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. and Stuart O. Simms, States Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GARRITY, BLOOM and FISCHER, JJ.

BLOOM, Judge.

Appellants, Martin Cook and William Darby, together with other persons, were charged in the Circuit Court for Baltimore City with various violations of the controlled dangerous substances laws and other offenses. After charges against Cook for assault and possession of a handgun and charges against Darby of possession of marijuana were severed, appellants were tried and convicted by a jury on all four counts of an information charging them jointly with possession of cocaine in an amount sufficient to indicate an intent to distribute it; conspiracy to distribute cocaine; conspiracy to possess cocaine in an amount sufficient to indicate an intent to distribute it; and maintaining a dwelling house as a common nuisance. As to each appellant, the two conspiracy convictions were merged. Cook was sentenced to three concurrent 15 year terms and a $5,000 fine; Darby was sentenced to three concurrent 5 year terms and a $2,000 fine.

This appeal from those judgments presents us with the following issues:

1. Did the trial court err in denying their motions to sever the cases for trial?

2. Did the trial court err in admitting evidence of other crimes as to both appellants?

3. Was the evidence presented sufficient to sustain appellants' convictions?

4. Did the trial court err in permitting a police officer to offer expert opinion as to the roles of each appellant in the drug distribution ring?

We find no error in the denial of appellants' motion for severance or in admitting the evidence that appellants' characterize as "other crimes evidence." The evidence adduced at trial was clearly sufficient to sustain appellants' convictions on all counts. We hold, however, that the court erred in permitting a police officer to state his opinion as to the role each appellant played in a drug distribution operation, thereby, in effect, rendering an "expert" opinion that appellants were, in fact, guilty of the crimes charged.

*Facts*

On 7 October 1988, Baltimore City Police Officers Charles Trogdon and Edward Bochniak obtained a search and seizure warrant for a house at 429 Pittman Place in Baltimore City. Immediately following the issuance of the warrant, Officer Trogdon checked the premises "to make sure that CDS was [still] coming from the house." Observing a man identified as Johnny Harris make two sales from the house, Trogdon decided to execute the warrant that day. He returned to the police station to finalize plans for a raid in execution of the warrant.

The raid involved seven officers, Trogdon being the "lead" and "recovery" officer, that is, the first to enter the premises and the officer responsible for taking possession of all drugs, weapons, or other property found. As Trogdon and Bochniak drove up to the premises, they observed Johnny Harris standing outside. While Bochniak arrested Harris for the sales he had made earlier that day, the other officers conducted the raid.

Trogdon broke down the front door with a maul and burst into the living room, yelling "Police!" Other members of the raiding party entered right behind him. According to a diagram drawn by Trogdon, in a corner of the room to the right of the door was a chair; appellants' co-defendant

Bernard Oliver was either in or near it. Further along the wall to Trogdon's right were two tables and another chair. To Trogdon's left was a couch on which appellants were seated, Darby being closer to the door than Cook.

Immediately upon entering the room, Trogdon observed Cook get to his feet, draw a handgun, and point it in the direction of Trogdon and Officer Michael Snow, who was immediately behind Trogdon. Trogdon drew his own service revolver and grabbed Cook's hand. In the struggle to disarm Cook, Trogdon wrestled him to the floor. Cook, Darby, and Oliver were arrested.

On one of the tables in the living room the police found a black change purse containing 27 vials of cocaine, a $5 bill with heroin on it, several empty ziplock baggies, a plastic sandwich bag containing 50 vials of cocaine, a brown paper bag containing 34 vials of cocaine, a plastic baggie containing 4.57 grams of cocaine, and a soda cup containing 50 empty vials. There were also 12 vials of cocaine strewn on the floor near the table. A brown bag containing 4 empty vials and a sandwich bag with 2 vials of cocaine and assorted baggies and pipes were found upstairs, in a drawer in a bedroom in which Patricia Rankin and her two children were sleeping.

A plastic bag containing 5 ziplock bags and 2 small plastic bags containing marijuana were found on appellant Darby's person. Appellant Cook had $124 on his person.

Various documents seized by the police identified the premises as belonging to or leased to Patricia Rankin.

Appellant Cook denied that he had a gun or that he pointed a gun at Officer Trogdon. He testified that he saw the gun for the first time when Trogdon pulled him off the floor and believed it must have come from the chair where Oliver had been sitting. Cook stated that he and Darby had purchased the marijuana previously and were smoking it when the police arrived.

Darby had no money on him when the police arrived. He testified that he was involved with Patricia Rankin and had

gone to the house to visit her. He had arrived about one-half hour prior to the raid, had some beer, and smoked one or two joints of marijuana with Cook. They were about to test some of Oliver's heroin when the raid began. Darby testified that the five packages of marijuana had been purchased elsewhere earlier that evening, for his own use. He claimed that he did not see Cook with a gun; he first saw the gun on the floor as the police arrested Cook.

## I

Appellants' first contention is that the court erred in refusing to sever their cases for trial, because evidence as to Cook's possession of a gun and assault on the policemen was prejudicial to Darby and evidence of Darby's possession of marijuana was prejudicial to Cook in that both bits of evidence improperly allowed the jury to infer guilt by association.

Maryland Rule 4–253(c) states:

(c) Prejudicial Joinder.—If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

■ As the Rule indicates, the decision to sever is discretionary. *McKnight v. State*, 280 Md. 604, 608, 375 A.2d 551 (1977); *Baumgartner v. State*, 21 Md. App. 251, 253, 319 A.2d 592 *cert. denied*, 272 Md. 737 (1974); *DiNatale v. State*, 8 Md.App. 455, 458, 260 A.2d 669 (1970); *Jennings v. State*, 8 Md.App. 312, 315, 259 A.2d 543 (1969).

■ We have recognized that joinder of defendants raises the possible threat of substantial prejudice through the transference of evidence of guilt from one defendant to another and the "spillover" effect giving rise to the possibility of guilt by association. *Shingleton v. State*, 39 Md.App. 527, 544, 387 A.2d 1134 *cert. denied*, 283 Md. 738 (1978); *Erman v. State*, 49 Md.App. 605, 615, 434 A.2d 1030 (1981),

*cert. denied,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982); *Sye v. State,* 55 Md.App. 356, 365, 468 A.2d 641, *cert. denied,* 299 Md. 425, 474 A.2d 218 (1983). Nevertheless, joinder of defendants for trial is favored for reason of judicial economy, *Erman, supra,* 49 Md.App. at 611, 434 A.2d 1030, and is appropriate "where most, if not all, of the evidence admitted at trial would have been admissible in each trial if the several defendants had been tried separately." *Stevenson v. State,* 43 Md.App. 120, 130, 403 A.2d 812, *aff'd,* 287 Md. 504, 413 A.2d 1340 (1979). Thus, the question for the trial court is whether the need for judicial economy in conserving time and resources of the court and witnesses outweighs the prejudicial effect of the evidence. *McKnight v. State, supra.*

■ Here, there was no prejudice to either appellant in the refusal to sever their trials on the charges lodged against them jointly. Any evidence that was admissible against either appellant on *those* charges would be admissible against both. So far as prejudicial joinder was concerned, they were both amply protected by the severance of the separate assault and weapon charges against Cook and the marijuana charge against Darby from the cocaine, conspiracy, and common nuisance charges lodged against both of them jointly. Whatever complaint Darby might have about the admission of evidence pertaining to Cook's possession of a gun and his use of it to assault two police officers, and whatever complaint Cook might have about the admission of evidence that Darby possessed marijuana, do not involve an issue of prejudicial joinder; what are involved are matters pertaining to the relevancy of evidence, which are more properly addressed under appellants' second issue, to which we now turn.

## II

Appellants complain that the court erroneously admitted evidence of other crimes. In support of that proposition they limit their argument to the evidence of Cook's posses-

sion of a handgun and assault on the police officers. They contend that this evidence was inadmissible as to either defendant on the four charges for which they were being tried. Since the assault and handgun charges against Cook had been severed, they assert, any evidence relating to those charges was irrelevant to the charges of possession of cocaine, conspiracy to possess and distribute cocaine, and common nuisance. The only purpose for the introduction of the evidence, appellants aver, was to show Cook's criminal character "and to paint Darby with the same brush." We disagree.

It is well settled that evidence of "other crimes" may be admitted if it is substantially relevant to a contested issue in the case and is not being offered merely to prove the defendant's guilt based on a propensity to commit crime or his character as a criminal. *State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896 (1989). Thus, "other crimes" evidence may be admitted to establish motive, intent, absence of mistake, a common scheme or plan, identity, opportunity, preparation, knowledge, or accident. *Id.* After determining that the evidence is admissible for a purpose other than to show a defendant's propensity to commit crime or a defendant's character for crime, the trial judge must weigh the necessity for and the probative value of the "other crimes" evidence against any undue prejudice likely to result from allowing it into evidence. *Id.*, at 634–35, 552 A.2d 896.

Appellants were charged with possessing cocaine with an intent to distribute it, conspiring to possess and distribute cocaine, and maintaining a common nuisance, that is, keeping a place used for the illegal storage or distribution of controlled dangerous substances. It was the State's theory, as testified by Officer Trogdon, that Cook was the leader of the group of conspirators and, as such, possessed the gun to protect the drugs and the operation. Therefore, his attempted use of the gun—the assault on the officers—was in furtherance of the conspiracy and the conspirators'

joint possession of the drugs and maintenance of the common nuisance. Since Darby was accused of being a member of the group, one of the conspirators, the evidence was just as relevant to the charges against him as it was to the case against Cook. Of course, if the State had failed to establish that Darby was one of the conspirators—if he were, as he claimed, merely a visitor—evidence as to Cook's possession and use of the gun would not have prejudiced him.

## III

Appellants contend that the evidence was insufficient to sustain their convictions. Since they challenge the sufficiency of the evidence to prove each charge, we must address the contention as it relates to each charge. Preliminarily, we note that, as appellants concede, our standard for review of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh. den.,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) (emphasis in original); *State v. Rusk,* 289 Md. 230, 424 A.2d 720 (1981); *Wallace v. State,* 63 Md.App. 399, 492 A.2d 970, *cert. denied,* 304 Md. 301, 498 A.2d 1186 (1985); *Wildberger v. State,* 74 Md.App. 107, 536 A.2d 718 (1988).

### A. *Conspiracy*

■ The Court of Appeals has defined criminal conspiracy as "the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means." *Mason v. State,* 302 Md. 434, 444, 488 A.2d 955 (1985), and cases cited therein. The Court noted that the essence of conspiracy is an unlawful agreement reflecting a unity of purpose and design, which need not be accompanied by an overt act. *Id.*

Appellants maintain that there was no direct evidence of an agreement between appellants and with Oliver and Rankin to distribute cocaine. Further, appellants contend that there were no facts from which it could be inferred that the parties had agreed to distribute cocaine. We disagree.

The testimony of the police officers established that surveillance of 429 Pittman Place indicated that it was the base of operations for a multi-person drug distribution organization. Johnny Harris had been observed conducting what appeared to be street drug transactions from the house. The testimony describing the actual raid on 429 Pittman Place established that appellant Cook was armed, an indication that he was the leader of the drug operation, and that appellant Darby was also present, along with Bernard Oliver, in a room in which significant amounts of cocaine and packaging materials, evidencing both ongoing and planned future cocaine distribution, were in plain view.[1] Certainly, the jury could reach a reasonable conclusion based on this evidence that a conspiracy to distribute cocaine existed and that the three men in the room with the cocaine were members of that conspiracy.

### B. *Constructive Possession*

Appellants contend that there was insufficient evidence of constructive possession to support their convictions for possession with intent to distribute. They asseverate that neither of them was an occupant of the house and that neither had been seen there before the raid. They argue

---

1. Officer Trogdon testified that the vials found during the raid were "color-coded" as indicated by the cap on each vial. He explained that the colored caps enable the drug dealer to ascertain from whom the vial was purchased, thus delineating geographic locations. Thus, if a buyer had a certain color capsule, the buyer could merely return to the area of the transaction for further business without having to know the dealer's name.

Officer Trogdon also explained the significance of a plastic baggie, found on the table, which was also discovered to contain cocaine. Officer Trogdon explained that due to the "chunky" nature of the substance, it had not been "cut" as yet, and approximately 30–35 vials eventually could be obtained from it.

that their mere presence at the scene is not sufficient to establish their constructive possession over the cocaine.

■ Article 27, § 277(s), of the Maryland Annotated Code defines possession as "the exercise of actual or constructive dominion or control over a thing by one or more persons." The duration of the possession is not material, neither is it necessary to prove ownership by title. *Folk v. State*, 11 Md.App. 508, 511, 275 A.2d 184 (1971). It is necessary to establish that the defendant had knowledge of the presence and illicit nature of the drugs; however, such knowledge may be proven by the circumstances. *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

■ This Court, in *Folk, supra,* examined various cases in which joint possession was found to exist. In analyzing these cases, we observed:

> The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

11 Md.App. at 518, 275 A.2d 184.

Significantly, in the case *sub judice*, three of the above elements are present. When the police executed the raid, they found appellants within several feet of a table laden with cocaine and packaging paraphernalia. The cocaine and accompanying paraphernalia were not secreted away, and one could not conclude, by any stretch of the imagination, that appellants were unaware of its presence. The house was one from which the police had observed a man exit on several occasions to conduct drug transactions. The house was sparsely furnished and was without electricity. This evidence, in the expert opinion of Officer Trogdon, indicated

that the house was being used as a base for a drug operation in which the appellants played a role. Therefore, despite the lack of proof that appellants had a proprietary or possessory interest in the house, the evidence was sufficient to permit the jury to conclude that appellants exercised joint and constructive possession of the cocaine.

### C. *Common Nuisance*

 Finally, appellants argue that the evidence was insufficient to prove that they "kept and maintained" a common nuisance.

A common nuisance within the controlled dangerous substance law is defined in § 286(a)(5) of article 27 as

> any dwelling house, apartment, building ... which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia....

Md.Crim.Law Code Ann., § 286(a)(5) (1987 Repl.Vol., 1989 Cum.Supp.).

The evidence that we have recited throughout our analysis of this matter was sufficient to allow the jury to find that appellants, with others, engaged in an ongoing drug distribution operation over a period of time at 429 Pittman Place, thereby maintaining a common nuisance.

### IV

Appellants' final contention is that the trial court erred in permitting Officer Trogdon to offer expert opinion as to the roles of appellants and others in the drug distribution operation.

Officer Trogdon rendered his opinion as to each appellant's role in the organization in response to questions posed by the prosecutor and objected to by defense counsel:

> Q. Officer, based upon your experience, can you form an opinion as to what each individual's role was that you

found on the premises starting with Martin Cook, the defendant?

A. It would be my opinion that he would be the head of the cocaine organization for that dwelling since he was the person having the currency and also the gun displayed when we entered the dwelling.

Q. What would be the basis of your opinion?

A. The basis of my opinion would be the years of experience that I have within the Eastern District and also the drug enforcement unit that I was in up until a month ago.

Q. What if any significance does the fact that he had the gun versus Mr. Darby, Mr. Oliver or Ms. Rankin?

MR. KAPLAN: Objection to that. That is simply guessing.

THE COURT: Overruled. If you can offer an opinion based upon your training and expertise.

THE WITNESS: Usually when a person is the head of a particular area, they usually have the guns and they usually have the weapons there within the dwelling.

Q. What if any opinion can you form as to Mr. Darby's role in this organization based upon your training and expertise?

A. Mr. Darby was working in conjunction with Mr. Cook conspiring to distribute and sell cocaine from that dwelling.

During my investigation, I had come to some conclusion that he and Ms. Rankin had established some type of relationship.

We knew that several persons were on the inside but didn't know their identity at the time.

Q. And what would be Mr. Darby's role?

A. He would be labeled also as the distributor. If for some reason Mr. Oliver was unavailable.

Q. On this particular occasion they were both there. What is the significance of that, if any?

. . . . .

MS. MATTHEWS: Objection.

THE COURT: Overruled. Opinion based upon your training and expertise?

THE WITNESS: They just got a product in and they were packaging the material and getting it ready for street sale.

The effect of Officer Trogdon's opinion evidence must be viewed in the light of the factual evidence and the charges against appellants. Appellants were in the living room of a house that obviously was being used as a base for storing, packaging, and/or distributing controlled dangerous substances; there were large quantities of such substances in plain view on, around, and under a table in the room. They were charged with the possession of those substances, with conspiring between themselves and with others to possess and to distribute those substances; and with maintaining the house as a common nuisance. In opining that appellant Cook was the head of the cocaine organization for that house and that appellant Darby was a distributor of the cocaine, Officer Trogdon was, in effect, stating an opinion that both appellants were guilty of all charges: as members of an organization using the house in which they were found for the distribution of the cocaine that was in the house, both would be (1) in joint possession, actual or constructive, of the cocaine; (2) part of one or more conspiracies to possess and to distribute the cocaine; and (3) using the house for the distribution of cocaine, *i.e.*, maintaining a common nuisance. The issue before us is whether it was proper for the court to admit that opinion over appellants' objections.

As a general rule, the admissibility of expert testimony is an area in which the trial court is given broad discretion, and it rarely constitutes a basis for reversal. *Simmons v. State*, 313 Md. 33, 43, 542 A.2d 1258 (1988). Nevertheless, the trial court's decision to admit or reject such evidence is reviewable upon appeal and may be reversed if it is founded on an error of law or if the trial court clearly abused its discretion. *Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472 (1977). Abuse of discretion may be found where the probative value of admitted testimony is outweighed by prejudice. *State v. Allewalt*, 308 Md. 89, 102, 517 A.2d 741 (1986). Prejudice, in the evidentiary sense, that can outweigh probative value involves more than mere damage to the opponent's case. *Id.*, at 102, 517 A.2d 741 (citing *McCormick on Evidence*, sec. 185, at 545 (3d ed. 1984)). The Federal and Revised Uniform Evidence Rules codify the common law power of the judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid., 403. Although Maryland has not adopted those rules, the principle is generally recognized and is included in the *Maryland Trial Judges Handbook on Evidence*, § 4–701(c):

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of (1) unfair prejudice, or (2) confusion of issues or misleading the jury, or (3) undue delay, waste of time or needless presentation of cumulative evidence.

Under modern Maryland case law, as Professor McLain points out,[2] the standard for the admissibility of expert evidence is whether the finder of fact can receive appreciable help from an expert on the subject matter. *See Cider Barrel Mobile Home v. Eader*, 287 Md. 571, 584, 414 A.2d 1246 (1980), in which the Court stated that "the

---

2. McLain, *Maryland Evidence*, § 702.1.

opinion of an expert, even on the ultimate issue of fact, is admissible if it is relevant and will aid the trier of fact." *See also Consolidated Mechanical Contractors, Inc. v. Ball,* 263 Md. 328, 338, 283 A.2d 154, 159 (1971); *Andrews v. Andrews,* 242 Md. 143, 153, 218 A.2d 194 (1966); *Harper v. Higgs,* 225 Md. 24, 38, 169 A.2d 661 (1961); *Shivers v. Carnaggio,* 223 Md. 585, 588–91, 165 A.2d 898 (1960).

In the case *sub judice,* Officer Trogdon's opinion that appellant Cook was the head of the drug organization using the house in which substantial quantities of controlled dangerous substances were found and that appellant Darby had a lesser role in that drug organization was highly prejudicial without being of any appreciable help to the jury, which had to determine whether either of the appellants was, in fact, part of the drug organization or, as each of them contended, was merely an invited guest.

Since the court had accepted Officer Trogdon as an expert in the field of drug dealing and operations involving the illicit business of storing, packaging, and distribution of controlled dangerous substances, it would certainly have been permissible for the officer to describe how such operations are normally or typically conducted. If such expert description of the typical drug organization operating out of a house such as the one Officer Trogdon and the other policemen raided on this occasion were to include testimony that the head of the organization is normally armed and usually has the organization's money on his person, the jury would have been just as capable as the witness to draw a conclusion that appellant Cook, who was armed and the only person in the room with money, was, indeed, the head of the organization. On the basis of the factual testimony, whether the jury could have reached the same conclusion Officer Trogdon reached as to appellant Darby's role is problematical; whether Officer Trogdon's conclusion was at all logical, based on those facts, is a matter we shall address *infra.* In any event, the jurors, given the facts and the expert testimony as to drug operations, could draw their own conclusions as to guilt or innocence. That was their

function. To permit one clothed by the court with the mantle of an "expert" in such matters to state his conclusion was highly prejudicial.

The Court of Appeals in *Bohnert v. State*, 312 Md. 266, 539 A.2d 657 (1988), a sexual abuse case, held that it was error to admit a social worker's expert opinion that the alleged victim, a child under 14 years of age, was sexually abused. The opinion was tantamount to a statement that the child was telling the truth and the defendant was lying, which was an encroachment upon the jury's function to judge the credibility of witnesses and to resolve contested facts.

Cases in other jurisdictions have allowed expert opinion testimony that comes very close to an opinion of the defendant's guilt, particularly in prosecutions for violations of controlled dangerous substances laws. In *State v. Odom*, 116 N.J. 65, 560 A.2d 1198 (1989), the Supreme Court of New Jersey held that it was permissible for a police officer who qualified as an expert to testify that, in his opinion, the eighteen vials of cocaine seized from the defendant's home during the execution of a search and seizure warrant were possessed by the defendant with the intent to distribute them. The Court stated that it appeared that the dominant authority throughout the country has ruled that an expert witness may testify that a defendant possessed a controlled dangerous substance with the intent to distribute it, even if the opinion was expressed in the language of the statutory offense, citing several cases from Arizona, California, Iowa, and Massachusetts and a federal case from the 8th Circuit to that effect. 560 A.2d at 1206. Other federal cases cited in a footnote had approved of expert police officer opinion testimony that the defendant was acting as a "steerer" in a drug transaction (*United States v. Brown*, 776 F.2d 397 (2d Cir.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986)); that what was found in defendant's apartment was precisely what the expert would expect to find in a "heroin mill" (*United States v. Young*, 745 F.2d 733 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct.

1842, 85 L.Ed.2d 142 (1985)); and that the actions engaged in by the defendants appeared to be a drug sale (*United States v. Carson*, 702 F.2d 351 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1335 (1983)). 560 A.2d at 1206 n. 1.

On the other hand, in *State v. Vilalastra*, 207 Conn. 35, 540 A.2d 42 (1988), a prosecution for possession of cocaine with intent to distribute, the Supreme Court of Connecticut reached a contrary conclusion. It held that although the prosecutor could properly have solicited the police officer's expert opinion whether items found in the defendant's apartment were commonly used by drug dealers, it was improper to inquire whether, in the officer's expert opinion, the defendant was a drug seller or a user, based on the items found. The court recognized that there was authority to the contrary.

> "[I]n a majority of state courts an expert may state his opinion upon an ultimate fact, provided that all other requirements for admission of expert opinions are met." C. McCormick, Evidence (3d Ed.) § 12, p. 30. Some jurisdictions have even permitted a police officer, who qualified as an expert witness, to testify that in his opinion a defendant had possessed certain drugs with the intent to sell. *State v. Carreon*, 151 Ariz. 615, 729 P.2d 969 (1986); *Hinnant v. United States*, 520 A.2d 292 (D.C.App.1987); *Commonwealth v. Johnson*, 358 Pa.Super. 435, 517 A.2d 1311 (1986).

540 A.2d at 47.

Nevertheless, and despite the fact that in *United States v. Brown, supra*, expert opinion that the defendant was a "steerer" in a drug transaction was admitted into evidence, the Court quoted with approval the following language from *Brown*:

> However, there is something rather offensive in allowing an investigating officer to testify not simply that a certain pattern of conduct is often found in narcotics cases, leaving it for the jury to determine whether the defendant's conduct fits the pattern, but also that such conduct

fitted that pattern, at least when other inferences could have been drawn not unreasonably although perhaps not as reasonably as that to which the expert testified.

*Id.*

We do not believe that there is any need for a hard and fast rule for the acceptance or rejection of expert opinion evidence as to ultimate facts that may tend to encroach upon the jury's function to determine guilt or innocence, or the credibility of witnesses, or to resolve contested facts. In each case, the court must decide whether the prejudice to the defendant will outweigh the usefulness to the jury of the opinion sought to be elicited from the expert. That may well depend upon the subject matter under discussion. Some matters may be within the understanding of the average person and the jury might not require the expert's opinion. Or the expert may testify that a certain pattern of conduct or the presence of certain factors is often found in a particular criminal enterprise, leaving it to the jury to apply that expertise to the facts of the case. As to some matters, on the other hand, it may be necessary for the expert to express his opinion on the ultimate fact in issue in such a manner as to come close to an encroachment on the jury's function to resolve contested facts in order for the jury to get the benefit of the expert's knowledge, where such knowledge is necessary for an understanding of the facts and cannot reasonably be imparted in a less prejudicial manner.

Weighing the usefulness to the jury of Officer Trogdon's opinions as to appellants' roles in the drug operation against the prejudice to appellants, we conclude that the prejudice so outweighed the usefulness that the admission of the opinion constituted an abuse of discretion. There was certainly no need for those opinions, so expressed, in order for the jury to understand the facts. The witness could have described the pattern of conduct normally, usually, or frequently associated with cocaine distribution operations and left it to the jury to decide whether appellants' conduct fit that pattern.

In appellant Darby's case, the error was compounded by the total lack of any factual support for the officer's conclusion that Darby was on the scene as a distributor. An expert opinion derives its probative force from the facts on which it is predicated, and these must be legally sufficient to sustain the opinion of the expert. *Doyle v. Rody*, 180 Md. 471, 25 A.2d 457 [1942]. The premises of fact must disclose that the expert is sufficiently familiar with the subject matter under investigation to elevate his opinion above the realm of conjecture and speculation, for no matter how highly qualified the expert may be in his field, his opinion has no probative force unless a sufficient factual basis to support a rational conclusion is shown. *State, Use of Stickley v. Critzer*, 230 Md. 286, 186 A.2d 586 [1962], and cases cited therein; *Hammaker v. Schleigh*, 157 Md. 652, 147 Atl. 790 [1929]. The opinion of an expert, therefore, must be based on facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support such conclusion. The facts upon which an expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere conjecture or guess. *Marshall v. Sellers*, 188 Md. 508, 53 A.2d 5 [1947].

*Bohnert v. State*, 312 Md. 266, 274–75, 539 A.2d 657 (1988) (quoting *State Health Dept. v. Walker*, 238 Md. 512, 520, 209 A.2d 555 (1965)).

The factual basis for Officer Trogdon's conclusion that Darby was a substitute distributor because the regular distributor, Oliver, was unavailable for some reason does not logically support that conclusion: (1) Darby was found in the house; (2) he had a relationship of some type with the tenant, Ms. Rankin. Having concluded from those facts that Darby was a distributor if Oliver wasn't available, the witness then went on to offer an explanation for the presence of a substitute when the first string distributor was available and on the scene: "They just got a product in and they were packaging the material and getting it ready for

street sale." There were no facts stated to support that conclusion either. When the police burst into the room, appellants Cook and Darby were seated on a sofa on one side of the living room and Oliver, the officer's choice for first string distributor, was seated in a chair on the other side. None of them were at or near the table on, under, and around which the drugs were strewn.

The error in admitting an expert opinion that appellant Darby was part of the drug organization, despite the weakness of the factual predicate for that opinion, prejudiced appellant Cook as well as Darby, since they were charged with conspiring with each other. And in view of the conspiracy charges, even if we were disposed to consider the admission of the opinion as to Cook's role harmless error as to him because of the strong factual support for that opinion, that opinion was prejudicial as to Darby. We hold, therefore, that the admission of Officer Trogdon's testimony as to appellants' roles in the drug operation was prejudicial error, for which their convictions must be reversed.

JUDGMENTS REVERSED. CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.