776 A.2d 120

**Kevin MOYE**

v.

**STATE of Maryland.**

No. 2028, Sept. Term, 2000.

Court of Special Appeals of Maryland.

July 9, 2001.

Jennifer P. Lyman, Assigned Public Defender, Washington, DC, for appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Baltimore, on the brief), for appellee.

Argued before SALMON, ADKINS and MICHELE D. HOTTEN (Specially Assigned), JJ.

ADKINS, Judge.

In this case we examine the circumstances under which a person may be considered to have exercised actual or constructive dominion or control over an illegal drug sufficient to support a conviction for possession of that drug. We hold that appellant's residence at a house in which marijuana and cocaine were found in plain view, combined with his presence in the specific area the drugs were located, was sufficient evidence to support his conviction for possession of those drugs. In doing so, we distinguish these circumstances from those present in the seminal case of *Taylor v. State*, 346 Md. 452, 697 A.2d 462 (1997).

On March 6, 2000, officers of the Prince George's County Police Department responded to an alleged "cutting" at a home located at 3414 Ricky Lane. During a search of those premises, the police discovered cocaine, marijuana, and drug paraphernalia. Kevin Moye, appellant, was convicted by a jury in the Circuit Court for Prince George's County of possession of marijuana, possession of cocaine, and possession of paraphernalia. As in the trial court, appellant asserts that the contraband discovered by the police did not belong to him. On appeal, he presents three questions for our review:

I. Whether the evidence was sufficient to support appellant's convictions.

II. Whether the trial court erred by refusing to instruct the jury on the legal definition of control, an essential element of possession.

III. Whether the trial court erred by failing to limit the jury's consideration of evidence that appellant was guilty of a "cutting."

Finding no error, we shall affirm the judgments of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

In the early morning hours of March 6, 2000, Prince George's County Police Officer Robert Black responded to a call to 3414 Ricky Lane. Black testified that he was responding to a reported "cutting." When he arrived at the scene, he observed Joseph and Yolanda Bullock, the owners of the home, exiting the residence. Shortly thereafter, Gregory Benson, a tenant who rented the basement of the home from the Bullocks, exited. Black observed cuts on both Yolanda Bullock and Benson.

Both the Bullocks and Benson informed Black that appellant was still in the residence. At this point, a number of police officers and a K–9 unit surrounded the home and the officers tried repeatedly to contact appellant. During this time, police officers observed appellant inside the home, looking out several windows. The police detected appellant's movement inside the house "first upstairs on the side window and ... also downstairs in the cellar basement area where the curtains [were] angling in the back part of the basement." Approximately forty minutes after the police arrived, appellant exited the home through a basement door and was arrested. Appellant had a cut on his finger, appeared "a little disoriented," and was "sweating profusely."

Officer William Silvers also responded to the scene. After appellant was arrested, Silvers entered the home to "make sure there were no other victims, no other suspects or weapons in the house." Silvers entered the home through the basement door from which appellant exited. Once inside the basement, Silvers saw "several opened drawers" that contained "individual bags of marijuana in a plastic bag tied at the top, [and] a lot of packaged material." He also observed, in

different open drawers, a scale, and a dinner plate with a razor blade. He observed a white residue substance on the scale, which was later identified as cocaine. The dinner plate also had "white residue on it," but there was no evidence as to whether the substance was cocaine.

While searching the basement, Silvers observed a missing ceiling tile. Upon seeing this, Silvers testified that he "for [his safety] and the safety of other officers that were in that house, ... [he] immediately went up and looked in the ceiling to make sure there were no suspects hiding in the ceiling, at which time [he] observed a large bag with leafy green substance." The bag contained marijuana and cocaine. Silvers further testified that a "burnt homemade cigarette which smelled of marijuana" was recovered from the basement. After receiving Joseph Bullock's consent to search the rest of the house, Silvers conducted that search and discovered a knife in an upstairs bedroom.

Appellant, Benson, and the Bullocks were charged with drug offenses. Benson and appellant were jointly tried. The cases against the Bullocks never went to trial. Yolanda Bullock pled guilty to possession of marijuana and the case against Joseph Bullock was placed on the STET docket. At appellant's trial, Joseph Bullock testified that Benson had rented the basement from him and his wife since 1999, and that appellant lived at the residence as well.

After the evidence was received, appellant and Benson moved for judgments of acquittal. The court dismissed the conspiracy charge against both defendants and the possession with intent to distribute cocaine charge against appellant. The jury subsequently returned guilty verdicts against appellant for possession of marijuana, cocaine, and paraphernalia, and acquitted him on the charge of possession with intent to distribute marijuana.[1] This appeal followed.

---

1. Benson was convicted on all the remaining charges against him.

## DISCUSSION

Appellant presents three reasons why he believes his conviction should be overturned. First, relying on the Court of Appeals' decision in *Taylor, supra,* he contends that the evidence was insufficient to establish that he possessed the controlled substances in question. Second, he asserts that the trial court erred by "refusing to instruct the jury on the legal definition of control, an essential element of possession." Lastly, he argues that the court erred by failing to limit the jury's consideration that appellant was involved in a "cutting." We shall address each issue in turn.

## I.

### Sufficiency Of The Evidence

Appellant contends that "no reasonable jury could have found beyond a reasonable doubt that [appellant] 'possessed' the marijuana, cocaine, or drug paraphernalia in question." He argues that "at most" the evidence establishes that he "(1) was in proximity to illegal drugs and paraphernalia"; (2) "was present in a room where marijuana had been smoked by someone at some unknown time in the past; and (3) that [he] may have had knowledge of the marijuana and paraphernalia that were found by the police in open drawers."

The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). The standard applies to all criminal cases, including those resting upon circumstantial evidence, *see Wiggins v. State,* 324 Md. 551, 567, 597 A.2d 1359 (1991), *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1765, 118 L.Ed.2d 427 (1992), because, generally, there is no difference between guilt based in whole or in part on circumstantial evidence and guilt based on direct evidence. *See Mangum v. State,* 342 Md. 392, 398, 676 A.2d 80 (1996). "[C]onviction upon circumstantial

evidence alone is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence." *West v. State*, 312 Md. 197, 211–12, 539 A.2d 231 (1988).

Appellant was convicted under Md.Code (1957, 1996 Repl. Vol.), Art. 27 § 287, which prohibits possession of marijuana, cocaine, and drug paraphernalia. Possession is defined as "the exercise of actual or constructive dominion or control over a thing by one or more persons." Art. 27, § 277(s). In order to sustain a conviction for possession, the "evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the defendant] exercised some restraining or directing influence over it." *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767 (1974).[2] "The duration of the possession is not material, neither is it necessary to prove ownership by title." *Cook v. State*, 84 Md.App. 122, 134, 578 A.2d 283 (1990), *cert. denied*, 321 Md. 502, 583 A.2d 276 (1991). Knowledge, however, is an essential element of "possession." The Court of Appeals has explained that

> "knowledge" is an element of [conviction under section 287]. The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom.

*Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

Appellant chiefly relies on the Court of Appeals decision in *Taylor* for the proposition that his mere presence in the house with contraband is not, in and of itself, sufficient to establish possession. *See Taylor*, 346 Md. at 460, 697 A.2d 462. In *Taylor*, the defendant was convicted for possession of marijuana. The evidence at trial established that the police found Taylor in a motel room with four other individuals. When the

---

**2.** *Garrison* "has been overruled in part." *Taylor*, 346 Md. at 461 n. 6, 697 A.2d 462. "The portions of *Garrison* addressing sufficiency of the evidence, however, remain valid authority." *Id.*

police entered, Taylor was sleeping, or pretending to sleep, on the floor. The police did not observe anyone using marijuana, but there were "clouds" of marijuana smoke in the room. Upon questioning, one of the occupants of the room voluntarily surrendered marijuana to the police that was contained in two separate travel bags, neither of which belonged to Taylor. Based on this evidence, the trial court found Taylor guilty of possession of marijuana because "the circumstances were sufficient to draw a reasonable inference that [Taylor] was participating with others in the mutual enjoyment of the contraband." *Id.* at 456, 697 A.2d 462.

The Court of Appeals disagreed. The Court recognized that Taylor "was not in exclusive possession of the premises, and that the contraband was secreted in a hidden place not otherwise known to be within [Taylor's] control." On this record, it held that Taylor's "mere proximity" to the contraband was insufficient to establish knowledge or·possession. *Id.* at 460, 697 A.2d 462.

> In sum, the evidence presented in this case was insufficient to establish that Taylor was in possession of the marijuana seized from [the] carrying bags. Taylor's presence in a room in which marijuana had been smoked, and his awareness that marijuana had been smoked, cannot permit a rational trier of fact to infer that Taylor exercised a restraining or directing influence over marijuana that was concealed in personal carrying bags of another occupant of the room.

*Id.* at 463, 697 A.2d 462.

We do not consider *Taylor* controlling in the instant case. As recognized by the *Taylor* Court, "convictions for possession cannot stand when the evidence does not establish, nor provides any reasonable inferences to establish, that the accused exercised dominion or control over the contraband." *Id.* at 461, 697 A.2d 462. In *Taylor,* the evidence was insufficient because the drugs were located in a closed bag and "his mere proximity to the contraband found concealed in a travel bag and his presence in a room containing marijuana smoke were

insufficient to convict him." *Id.* at 463, 697 A.2d 462. As we shall discuss, *infra,* in the instant case, appellant resided at the premises where the marijuana and cocaine were in plain view. An examination of the cases relied on in *Taylor* supports our view that the *Taylor* holding was not intended to encompass the facts of this case.

In *Taylor,* the Court of Appeals reviewed the cases in which Maryland appellate courts have found that the evidence was insufficient to support a conviction for possession of a controlled dangerous substance. In each of the cases addressed by *Taylor,* the controlled substance was in a closed container or outside of the plain view of the accused. *Garrison, supra,* and *State v. Leach,* 296 Md. 591, 463 A.2d 872 (1983), were the two Court of Appeals cases relied upon in *Taylor.* In *Garrison,* the defendant's husband had possession of 173 glassine bags of heroin and was in the process of discarding the heroin in the toilet. The heroin was not in the plain view of the defendant, who was found in bed, in a bedroom not adjacent to the toilet where the drug was discarded. *Garrison,* 272 Md. at 126, 321 A.2d 767.

In *Leach,* the defendant, with his brother, had "joint dominion and control ... over the entire apartment and over everything contained anywhere in it." *Leach,* 296 Md. at 596, 463 A.2d 872. While executing a valid search warrant, the police found phencyclidine (PCP) in a closed container in a bedroom closet. The Court held that this evidence was insufficient to support the defendant's conviction, because "[e]ven though [the defendant] had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP *in a closed container* on the bedroom dresser or over paraphernalia in the bedroom closet." *Id.* (emphasis added)

*Taylor* also discussed several decisions of this Court, but in none of these were the illegal substances out in the open or in the plain view of the accused. *See, e.g., Tucker v. State,* 19 Md.App. 39, 45, 308 A.2d 696 (1973) (holding evidence insufficient to establish defendant had physical or constructive pos-

session when the drugs that were discovered in a hotel room that he shared with a co-defendant were secreted and out of plain view); *Barksdale v. State,* 15 Md.App. 469, 475, 291 A.2d 495 (1972) (evidence insufficient to support conviction when defendant was merely present in an apartment in which a woman's purse and a cigarette case containing heroin were found); *Puckett v. State,* 13 Md.App. 584, 587–88, 284 A.2d 252 (1971) (holding evidence of marijuana plants on premises defendant owned with his wife insufficient where marijuana plants were grown in an "uncultivated" area and there was a "total absence of evidence of [the defendant's] involvement"); *Haley v. State,* 7 Md.App. 18, 33–34, 253 A.2d 424 (1969) (holding evidence insufficient to support conviction when none of the defendants had any proprietary interest nor previous association with the premises and there was no evidence of how long the defendants had been on the premises prior to the arrival of the police); *Wimberly v. State,* 7 Md.App. 302, 308, 254 A.2d 711 (1969) (holding evidence insufficient for conviction for possession of controlled dangerous substances when the drugs were not found on the person of or in the same room as the defendant, but were only found on other persons on the premises).

In this case, unlike *Taylor* and the cases it relied on, both marijuana and cocaine were in the open and were not concealed.[3] The marijuana was in an open drawer, as was the dinner plate with the white powdery residue, and a razor blade on top of the plate. A nearby open drawer held scales with the cocaine residue. Significantly, Bullock's testimony established that appellant resided at the house. Although appellant's bedroom was not in the basement where the drugs were located, there was free access between the upstairs and the

---

**3.** We do not rely on the marijuana and cocaine found stored above the broken ceiling tile because these were not in plain view of appellant. Although the cocaine found on the scales was only a residue, Officer Silvers observed it and believed it to be cocaine. This was sufficient evidence to allow the jury to infer that appellant also knew it to be cocaine and, given the other circumstances, had constructive joint possession of it.

basement. Moreover, the police observed appellant in the basement of the residence where the cocaine and marijuana were discovered. Appellant's residence in the premises and his presence in the room where the plain view contraband was discovered allows a reasonable inference that appellant was aware of and possessed the illegal drugs. *See Davis v. State*, 9 Md.App. 48, 55–56, 262 A.2d 578 (1970).

In *Davis*, the defendant was co-lessee and part-time resident of an apartment in which hashish was found in plain view. The defendant was not present when the hashish was discovered by the police, but walked in shortly after the police arrived. This Court recognized that his co-occupancy status was not alone sufficient to support a conviction for possession. It nonetheless considered the plain view presence of the illegal drugs, under the circumstances, sufficient to provide the necessary evidentiary support:

> [T]he fact that the hashish was lying in clear view of anyone having a right of access to the premises tended to establish that Davis exercised control of it. The evidence that he entered the premises shortly after the police arrived tended to establish his identification with the marihuana exposed to plain view within the apartment.

*Id.* at 56, 262 A.2d 578.

Likewise, in *Cook v. State*, 84 Md.App. 122, 578 A.2d 283 (1990), we held that the evidence was sufficient to support a defendant's conviction for possession with intent to distribute. In *Cook*, the police found the defendants "within several feet of a table laden with cocaine and packaging paraphernalia." *Id.* at 134, 578 A.2d 283. There was no evidence, however, that the defendants had a possessory interest in the premises. Before this Court, the defendants argued that the evidence was insufficient to support their convictions because "neither of them was an occupant of the house and ... neither had been seen there before the raid." *Id.* at 133, 578 A.2d 283.

We held that the evidence was sufficient to establish possession. In so doing, we quoted from our decision in *Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184 (1971), which ana-

lyzed the cases in which joint possession was found to exist, and recognized:

> The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises ... in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Cook,* 84 Md.App. at 134, 578 A.2d 283. In applying these factors, we held that "three of the above elements are present ...., [and] [t]herefore, despite the lack of proof that [the defendants] had a proprietary or possessory interest in the house, the evidence was sufficient to permit the jury to conclude that [the defendants] exercised joint and constructive possession of the cocaine." *Id.* at 134–35, 578 A.2d 283.

 Like *Cook,* the factors identified in *Folk* are present in the instant case. The evidence supported the inference that appellant lived at the residence. Marijuana, cocaine, and paraphernalia were lying in the open. Notably, appellant was in the area of the house where the drugs were found in plain view before he surrendered to the police. This evidence, viewed in a light most favorable to the State, supports a rational inference that appellant had knowledge and control of the contraband. Therefore, the evidence supports his convictions.

## II.

### Jury Instructions

Appellant next contends that the trial court erred when it refused to give a jury instruction he requested concerning "control." Specifically, appellant argues that the court's "unwillingness to incorporate [the requested instruction] into the

possession instruction, fatally prejudiced [his] defense." We disagree and explain.

At the conclusion of all the evidence and prior to jury instructions, appellant requested the trial court to modify the pattern jury instruction it intended to give concerning the definition of "possession." Based on *Taylor*, appellant's counsel requested the court to define possession as "the exercise of actual or constructive dominion or control over a thing by one or more persons." Appellant's counsel argued to the court that the modification was necessary because "[t]he standard instruction, for some reason, doesn't include the language 'dominion.' I don't know why, but they don't. And I ask the [c]ourt to insert the language 'dominion or control.'"

The court refused to give appellant's requested instruction, and gave the following instruction to the jury based on the pattern jury instruction:

In order for the State to prove each Defendant guilty of possession as charged the State must prove, one, that the Defendant knowingly possessed the substance. Knowingly possessed the substance.

Number two, that the Defendant knew the general character, or illicit nature, of the substance. That the Defendant knew the general character or illicit nature of the substance.

And the third and last element is that the substance was what it was alleged to be, cocaine or marijuana.

Now, what does possession mean?

Possession means having control over that substance, whether it is actual or indirect.

Another word for indirect is constructive.

The Defendant does not have to be the only person who is in possession of that particular substance. And this means to say that more than one person can be in possession of the same substance at the same time. We often times call this joint possession.

A person not in actual control, who knowingly has both the power and the intention to exercise control over a thing, either personally or through another person, has what we call indirect possession.

Now, in determining whether a Defendant has indirect possession, or, again, constructive possession, as I said earlier, of a substance, consider all of the surrounding circumstances. Those circumstances can include, but are not limited to, say, the distance between that Defendant and the substance, whether that Defendant had some ownership or possessory interest in the place where the substance was found, and any other indications that the Defendant was participating in other than mutual use and enjoyment of a substance.[4]

Maryland Rule 4–325(c) provides that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.... The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." The Court of Appeals has instructed consistently that the requirements of this Rule "are mandatory and that under the Rule a trial judge must give a requested instruction that correctly states the applicable law and that has not been fairly covered in instructions actually given." *Mack v. State*, 300 Md. 583, 592, 479 A.2d 1344 (1984). Therefore, a requested instruction must be given "under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given." *Ware v. State*, 348 Md. 19, 58, 702 A.2d 699 (1997).

"[S]o long as the law is fairly covered by the jury instructions, reviewing courts should not disturb them." *Farley v. Allstate*, 355 Md. 34, 46, 733 A.2d 1014 (1999). Nevertheless,

---

4. Use of the phrase "other than" in the eighth line of this sentence rather than the phrase "with others," appears to be an error either by the judge or in the transcription. Because appellant raises no objection on this ground, however, we shall not consider it.

"[i]t is incumbent upon the court, ... when requested in a criminal case, to give instructions on every essential question or point of law supported by the evidence." *Green v. State,* 119 Md.App. 547, 562, 705 A.2d 133 (1998) (citations omitted). We have explained that

> [t]he main purpose of a jury instruction is to aid the jury in clearly understanding the case and considering the testimony; to provide guidance for the jury's deliberations by directing their attention to the legal principles that apply to and govern the facts in the case; and to ensure that the jury is informed of the law so that it can arrive at a fair and just verdict. Accurate jury instructions are also essential for safeguarding a defendant's right to a fair trial. The court's instructions should fairly and adequately protect and accused's rights by covering the controlling issues of the case. It follows, therefore, that a criminal defendant is entitled to have presented to the jury instructions relating to a theory of defense for which there is sufficient support in the evidence, though the evidence has been impeached or is otherwise controverted by evidence of the State.

*Robertson v. State,* 112 Md.App. 366, 385, 685 A.2d 805 (1996) (citation omitted).

■ Appellant contends that the instruction given by the trial court failed to focus on his theory of defense—that he was merely present in the house and did not "possess" the contraband. We disagree and hold that the given instructions adequately addressed appellant's theory of the case. In instructing the jury, the court essentially utilized the *Maryland Criminal Pattern Jury Instructions. See MCPJI* 4:24. "[G]enerally, the pattern jury instructions suffice and trial judges usually may rely on them." *Bayne v. State,* 98 Md. App. 149, 160, 632 A.2d 476 (1993). Of course, situations may arise when a pattern jury instruction is not adequate or complete. *See e.g., Green,* 119 Md.App. at 562, 705 A.2d 133 (holding that pattern jury instruction was inadequate "because it did not encompass the valid defense asserted by [the defendant]"). The instant case, however, does not present such a circumstance.

■ The trial court's instruction adequately informed the jury that appellant's proximity to the contraband in the house was not, in and of itself, sufficient to warrant a finding of possession, and encompassed appellant's request that "possession be defined as 'the exercise of actual or constructive dominion or control over a thing by one or more persons.'" First, the court's instruction properly informed the jury of the "knowledge" requirement of possession. Moreover, the instruction explained the differences between "actual" possession and "indirect possession or constructive possession" and defined these terms for the jury. Finally, the court listed a number of factors for the jury to consider in determining whether appellant possessed the contraband, including whether appellant had a possessory interest in the residence, the distance between appellant and the contraband, and "any other indications that the Defendant was participating in other than mutual use and enjoyment of a substance." Although the court did not use the "dominion" language requested by appellant, it was not required to do so. Indeed, the term "dominion" is analogous to the definition of "control" utilized by the trial court. *See, e.g. Black's Law Dictionary* at 502 (7th ed.1999) (defining "dominion" as "control; possession.") We conclude that the trial court did not err by not giving appellant's requested instruction.[5]

## II.

### Trial Court's Failure To Give Limiting Instruction

■ Appellant's final contention is that the court erred in failing to instruct the jury to disregard evidence that he had

---

**5.** In his brief, appellant contends that the alleged error committed by the trial court was magnified when the prosecutor "gave two misleading examples of possession and control" during closing arguments. Appellant never objected to the examples given during the prosecutor's closing. Therefore, he has failed to preserve his challenge to the alleged improper statement for our review. *See Conner v. State,* 34 Md.App. 124, 135, 366 A.2d 385 (1976) ("failure to object [to a prosecutor's statements during closing arguments] and to request the Court's correction is a waiver of the contention for appellate review").

committed a "cutting." During the course of the trial, references to the alleged cutting were made on numerous occasions. According to appellant, "[w]ithout a limiting instruction the jury improperly could have inferred that [appellant] was a violent person with a criminal propensity ... [and] could have inferred that [appellant] committed the cutting in connection with a fight over the drugs in the house."

Appellant never requested a limiting instruction or objected to the references to the alleged cutting. As a result, appellant has failed to preserve his objection to the trial court's failure to give a limiting instruction for our review. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court...").

■■■■ Appellant insists that the trial court's failure to give a limiting instruction "warrants plain error review." Plain error is "error which vitally affects a defendant's right to a fair and impartial trial." *State v. Daughton,* 321 Md. 206, 211, 582 A.2d 521 (1990). We will address an unpreserved issue under the plain error doctrine only in those instances that are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson,* 287 Md. 198, 203, 411 A.2d 1035 (1980). In deciding whether to exercise our discretion under the plain error doctrine, we may consider the egregiousness of the trial court's alleged error, the impact upon the defendant, the degree of lawyerly diligence or dereliction, and whether the case could serve as a vehicle to illuminate the law. *See Austin v. State,* 90 Md.App. 254, 268–72, 600 A.2d 1142 (1992).

■■■ We decline to exercise our discretion because the instant case does not present such compelling or extraordinary circumstances that would require invocation of the plain error doctrine. Furthermore, appellant attempted to use the alleged cutting to his own benefit during trial. For example, his counsel argued that the alleged cutting provided a reasonable explanation for appellant's failure to exit the house when the police arrived. Appellant cannot now, on appeal, contend that

it was error to limit evidence concerning the cutting when he attempted to use that same evidence for his own benefit during trial. *See, e.g., State v. Brown,* 324 Md. 532, 547, 597 A.2d 978 (1991) ("If the post conviction court determines that the reason for the lack of protest or objection was a matter of trial tactics or was otherwise a considered decision on the part of defense counsel, then the defendant is not entitled to relief").

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**