Selena WASHINGTON, et al., Plaintiffs,

v.

Robert VOGEL, et al., Defendants.

No. 93–482–Civ–Orl–22.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 5, 1995.

Luis F. Gomez, Orlando, FL, Charles Gilbert Burr, III, Melanie Locklear, Charles G. Burr, P.A., Tampa, FL, Dennis Courtland Hayes, Willie Abrams, NAACP Special Contribution Fund, Baltimore, MD, E.E. Edwards, Edwards & Simmons, P.A., Nashville, TN, James Edward Clark Perry, Law Office of James E.C. Perry, Orlando, FL, for plaintiffs.

David V. Kornreich, Jeffrey E. Mandel, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Orlando, FL, for defendants.

## ORDER

CONWAY, District Judge.

This cause comes before the Court for decision on various motions *in limine* filed by the Defendants. The Court has considered such motions, and issues the following rulings thereon.

### Defendants' Motion In Limine With Respect to the Testimony of Francisco Muriel

Francisco Muriel and Plaintiff Jorge Nater occupied a vehicle stopped by a SET Unit member. Muriel is also a plaintiff in the related case of *Evans and Muriel v. Robert Vogel and Volusia County, Florida,* case no. 94–462–CIV–ORL–22.

■ Defendants seek to exclude Muriel as a trial witness on the basis that Plaintiffs' counsel concealed information about Muriel until shortly before the parties' final pretrial statement was due. Alternatively, Defendants seek a ruling precluding Muriel from testifying about a second traffic stop that occurred the day after the stop which is the subject of this suit, and about psychological injury he has allegedly suffered as a result of either or both of the traffic stops.

The Court is not convinced that Plaintiffs' counsel intentionally concealed information about Muriel. In any event, Defendants were able to depose Muriel, and had fourteen days from the time of the deposition to the day the parties filed their pretrial statement to react to Muriel's "new" information. Defendants have not apprised the Court of what, if any, efforts they made in the interim to investigate Muriel's testimony and to attempt to locate witnesses to rebut that testimony. Significantly, Defendants have not filed a motion to amend their witness list to add any rebuttal witnesses. Hence, even if Plaintiffs' counsel had engaged in improper discovery tactics, Defendants have failed to demonstrate that they have in fact been prejudiced. Under these circumstances, the Court will not bar Muriel from testifying at trial.

Defendants argue that Muriel should not be permitted to testify concerning the second traffic stop since, at the time of his deposition, Muriel could not positively identify the officer as a member of the VSCO. Analysis of the deposition transcript reveals that Muriel offered somewhat confused testimony concerning the identity of the law enforcement agency involved in the second traffic stop. Although Muriel initially indicated that he was comfortable conducting the deposition in English, it is apparent from the transcript that he experienced difficulty throughout the deposition understanding the questions posed. Since Muriel's testimony concerning the second stop may be admissible, the Motion will be denied insofar as it seeks a pretrial ruling excluding that testimony.

■ Finally, Defendants argue that Muriel's testimony concerning psychological injury he allegedly has suffered as a result of the stops should be excluded for the reason that it is irrelevant to the issues herein. The Court agrees. While this testimony might be pertinent to issues in Muriel's case, it is not relevant to any issue in this case. Even if relevant, the probative value of such evidence is substantially outweighed by its prejudicial effect, with the result that it must be excluded pursuant to Fed.R.Evid. 403. Accordingly, the Motion will be granted insofar as it seeks exclusion of Muriel's testimony concerning his alleged psychological injuries. Plaintiffs' counsel shall inform Muriel of this ruling before he testifies.

### Defendants' Motion In Limine With Respect to Certain Testimony Regarding Alleged Brutality, Racial Slurs/Jokes, and Photographs of Alleged Victims

By this Motion, Defendants seek to prohibit the introduction of evidence of alleged incidents of brutality and racial slurs by VCSO deputies, and photos of alleged victims of brutality by VCSO members. However, Plaintiffs' Response to the Motion makes clear that Plaintiffs seek to introduce such evidence only as it relates to members of the SET Unit, rather than to the entire Sheriff's Department. In that connection, Plaintiffs state: "The plaintiffs intend to introduce evidence through the testimony of one or more witnesses that members of the SET unit used racial slurs when describing minority

motorists, used excessive force against black motorists who were being arrested, and displayed photographs of black beating victims as 'war trophies' at VCSO headquarters." Plaintiffs' Response in Opposition to Defendants' Motions In Limine at 13 (emphasis supplied).

It is possible that, if tied to the SET Unit, such evidence may be relevant to the issue of whether the traffic stops and resulting events were racially motivated. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 655 (11th Cir.1993) (Title VII case; "evidence of '[d]erogatory remarks indicative of a discriminatory attitude' are generally admissible to prove discriminatory treatment" (citations omitted)), *reh'g en banc denied,* 16 F.3d 1233, *cert. denied,* —— U.S. ——, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994). However, the parties' memoranda only generalize the evidence in question. As a result, the Court is presently in a poor position to render a final decision on the relevancy and prejudicial effect of this evidence. Accordingly, the Motion will be denied insofar as it seeks a pretrial ruling that this evidence is inadmissible.

### Defendants' Motion In Limine With Respect to Certain Testimony of Witness Donald McCormick

■ Donald McCormick is a former deputy sheriff of the VCSO. According to Defendants, "McCormick is expected to testify at trial regarding alleged conversations about practices of the [SET Unit] he had with former team member Steve Rupert, after the time that Deputy Rupert was associated with the team." Defendants' Motion (Dkt. 165) at 1–2. Defendants claim that Rupert's statements to McCormick are inadmissible hearsay. Alternatively, Defendants contend that the prejudicial effect of the statements substantially outweighs their probative value.

Despite Defendants' assertion that the transcript of McCormick's deposition previously was filed with the Court, the Court is hampered by the fact that it does not appear that the deposition transcript was actually filed. The docket sheet does not reflect any such filing. However, based on the parties' proffers, it appears that McCormick testified as follows: While he and Rupert were working together as deputies, Rupert told him to position his patrol vehicle perpendicular to the road, so that the headlights would shine across the highway and reveal the color of the drivers and occupants of passing vehicles. Rupert told McCormick that he should concentrate on "dark complexioned" drivers. When a dark-complected motorist would drive by, Rupert would say "There goes one." McCormick took this comment to mean "There goes what I want. That's who I'm gonna stop." On many occasions, Rupert stopped vehicles when the driver had not committed a traffic violation.

Plaintiffs urge the Court to rule that Rupert's statements are admissible pursuant to Rule 801(d)(2)(D), Federal Rules of Evidence. That Rule provides, in pertinent part, as follows:

(d) Statements which are not hearsay. A statement is not hearsay if—

\* \* \* \* \* \*

(2) Admission by party-opponent. The statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

At the time Rupert allegedly made these comments, he was no longer a member of the SET Unit; however, he remained a deputy of the Sheriff. Moreover, the statements concerned a matter within the scope of Rupert's employment as a deputy sheriff. Under these circumstances, the Court determines that Rupert's comments were the admissions of the servant of a party opponent, admissible pursuant to Rule 801(d)(2)(D). Moreover, the Court determines that the probative value of the statements is not substantially outweighed by their prejudicial effect. Accordingly, the instant Motion will be denied.

### Defendants' Motion In Limine With Respect To Certain Testimony, Documents and Caricature Pertaining to Common Characteristics of Drug Couriers

Defendants seek to exclude evidence relating to two documents: a purported drug

courier "profile" and a caricature of a black male. In their Response, Plaintiffs represent that they do not intend to offer any evidence concerning the caricature. Accordingly, this Order will address only the drug courier profile.

■ *Authenticity.* At his deposition in this case, VCSO Deputy Sheriff Richard Forrest testified about a document entitled "Common Characteristics of Drug Couriers." In pertinent part, the document states:

I. COURIER VEHICLES ON THE ROAD

    A. Things to Look for Before Stop

      \*     \*     \*     \*     \*     \*

    4. Driver

      \*     \*     \*     \*     \*     \*

      c. ethnic groups associated with drug trade

Forrest testified as follows: The profile was passed out during a VCSO briefing session. Deposition of Richard Forrest (Dkt. 167) at 5, 12. When the briefing occurred, Forrest was on duty and assigned to patrol. *Id.* The briefing was attended by Forrest's supervisors, Cpl. Grady Jackson and Sgt. Jim Harting, and possibly ten deputies. Forrest believes the briefing took place either at "the trailer, out at Operations" or at "Central." *Id.* at 12, 13, 16.

Forrest received the document "roughly" in the early part of 1989, around the time that Sheriff Vogel took office. *Id.* at 5, 16. Although it was possible he was given the profile just prior to Sheriff Vogel taking office, he believed that Vogel had already come into office when he received the document. *Id.* at 5, 16, 37, 38. The briefing concerned the "procedures they were doing out on the interstate." *Id.* at 5, 18, 19. The attendees were told "to use [the document] if we— when we did have a vehicle stopped." *Id.* at 5. To Forrest's best recollection, when the document was passed out, the attendees were told that "it was the profile that the Sheriff was using out on the interstate." *Id.* at 18. Forrest never used the profile to make traffic stops. *Id.* at 6, 19, 20.

Forrest did not recall who conducted the briefing, who handed out the profile or who discussed the document. *Id.* at 5, 6, 14. He testified, however, that the briefing could have been given by one of the sergeants or a lieutenant. *Id.* at 14, 15. He did not have "firsthand knowledge" that Vogel ever authorized that the profile be passed out to the deputies, or who directed that the document be handed out. *Id.* at 27.

Defendants object to the admission of the document, and evidence concerning it, on the basis that the document has not been authenticated, that it is hearsay, and that the prejudicial effect of such evidence substantially outweighs its probative value.

This authenticity question is governed by Rule 901, Federal Rules of Evidence, and the cases construing it. In pertinent part, Rule 901 provides as follows:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

    (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

"[Rule] 901(a) requires only some competent evidence in the record to support authentication." *U.S. v. Elkins,* 885 F.2d 775, 785 (11th Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). Conclusive proof of authenticity is not required. *U.S. v. Arce,* 997 F.2d 1123, 1128, *reh'g denied,* 5 F.3d 1493 (5th Cir.1993). Rule 901 "merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *Id.* Procedurally,

[a]uthentication or identification under Rule 901 merely involves the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie showing has been made, the evidence should be admitted, although it

remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be.

*U.S. v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir.1985) (citation omitted). Moreover, a document may be authenticated "solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *U.S. v. Smith*, 918 F.2d 1501, 1510 (11th Cir.1990), *cert. denied*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991); *Arce*, 997 F.2d at 1128. The specific identity of the document's author is not necessary. *Smith*, 918 F.2d at 1510.

Analysis of Eleventh Circuit precedents confirms that the authenticity standard is fairly liberal.[1] For example, in *U.S. v. Hawkins*, 905 F.2d 1489 (11th Cir.1990), *cert. denied*, 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991), the authenticity of a letter addressed to a corporation was in question. The court held that the letter was properly authenticated based on a corporate representative's testimony that the corporation had received the letter and that he "was familiar with it." *Id.* at 1494. In *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1574 (11th Cir.1989), minutes of a committee meeting were held to have been authenticated (though minimally) on the basis of testimony of a committee member that the documents "looked like he expected them to look."[2]

Further guidance is provided by *U.S. v. Long*, 857 F.2d 436 (8th Cir.1988), *cert. denied sub nom. Jackson v. U.S.*, 502 U.S. 828, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991). In *Long*, the issue on appeal was whether a witness, Stratten, had properly authenticated a contract. The court's analysis is instructive:

> The government contends that Stratten was not a party or a signatory to the document or witness to it. The question of authenticity here, however, is not whether the contract was an authentic contract between Jackson and Long but whether it reasonably could be the document which Stratten claims she saw and read at the airport. The defense did not have to prove the contract's reliability and accuracy. This was a matter for the jury to determine after examining all the evidence. Thus, the document was authenticated as the document which Stratten claims she saw and read.

*Long*, 857 F.2d at 442 (citation and footnote omitted).

Based on these authorities, the Court determines that Plaintiffs have made out a prima facie case of authenticity. The Court places great weight to the official circumstances under which Deputy Forrest says he obtained the document. Assuming the truth of Forrest's testimony, the profile was passed out to on-duty VCSO personnel as part of a group briefing, attended by supervisory personnel, which occurred on VCSO premises. The attendees were told that the profile was one that Sheriff Vogel was using on the interstate, and were instructed to utilize the document in carrying out their duties. Forrest believes the briefing occurred after

---

1. The Defendants have cited the Eleventh Circuit case of *Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir.1990), *overruled on other grounds by McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994). In *Nolin*, the district court ruled that a document was not authenticated on the basis of a witness' testimony that he was "somewhat familiar" with it. *Nolin*, 903 F.2d at 1551. The appellate court held that the trial court had not abused its discretion in excluding the document. Central to the court's holding was its conclusion that the opposing party had "offered sufficient evidence to bring into question the authenticity of the documents, namely that two different documents purporting to be the controlling guidelines had been offered." *Id.* at 1552. The Court was guided by *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1574 (11th Cir.1989). In *Stuckey*, documents were sufficiently authenticated by testimony that they "looked like [the witness] expected them to look", in part because the objecting party "offered no evidence to counter the minimal showing ... that the documents were authentic." *Id.* In the instant case, by contrast, Defendants have not offered any evidence to counter Plaintiffs' showing that the document is authentic. Hence, *Nolin* in distinguishable and inapposite.

2. Contributing factors to the court's decision were that the opponent did not offer any evidence in opposition to the showing of authenticity, trial testimony by committee members was consistent with the documents, and, based on the totality of the evidence, the opponent suffered no prejudice by admission of the documents.

Sheriff Vogel took office. That Forrest cannot identify the specific author of the profile, or who distributed it, spoke about it at the briefing, or authorized it to be distributed, are factors bearing on the weight, not the admissibility, of the document.[3] Finally, Defendants have offered no evidence to counter Plaintiffs' showing that the document is authentic.

■ *Hearsay.* Defendants urge exclusion of the profile on the basis that it is inadmissible hearsay. Plaintiffs counter that the document is not hearsay, since they are not offering it for the truth of the matters set forth therein. Plaintiffs state that they seek to introduce the document to prove, *inter alia,* that a profile existed "contemporaneously with Sheriff Vogel's training of the SET unit deputies regarding interdiction operations on Interstate 95", and that "the VCSO used a profile during Sheriff Vogel's term in office." Plaintiff's Response at 12. The Court agrees with Plaintiffs that the profile is not hearsay if offered for these purposes.

*Fed.R.Evid. 403.* Defendants argue that the prejudicial effect of the profile substantially outweighs its probative value, such that it should be excluded pursuant to Fed. R.Evid. 403. The Court disagrees.

Based on the foregoing, the instant Motion will be denied.

### Defendants' Motion In Limine With Respect to Certain Testimony of Witness William Long

■ At his deposition, former VCSO deputy William Long testified that about the time a series of newspaper articles appeared in the Orlando Sentinel concerning VCSO traffic stops on I–95, former SET Unit member Deputy Lou Garcia told him, *inter alia,* that "he heard the sheriff make reference to using a profile to stop individuals on the roadway", that "they would sit sideways on the roadway and shine their high beams across the highway and look at individuals", that "[t]hey

would take off after a vehicle purely on who occupied the vehicle as opposed to witnessing any violation of a traffic law", and that "he witnessed them pull people over without any true cause." Deposition of William Long (Dkt. 169) at 13–17.

Defendants argue that Long's testimony about Garcia's statements is inadmissible hearsay. Plaintiffs respond that the testimony is not hearsay; rather, they contend, it is admissible pursuant to Fed.R.Evid. 801(d)(1)(B) to show Garcia's prior consistent statements.

In pertinent part, Rule 801(d)(1)(B) provides:

> (d) Statements which are not hearsay. A statement is not hearsay if—
>
>> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication ... [.]

Review of the transcript of Garcia's deposition suggests that Defendants will attempt to demonstrate at trial that Garcia is lying about certain relevant events. However, Long's testimony will be admissible pursuant to Rule 801(d)(1)(B) only if the Defendants' conduct at trial can be fairly characterized as expressly or impliedly charging Garcia with recent fabrication. Under these circumstances, the Court will grant the instant Motion, with the *caveat* that Long's testimony may be admitted at trial if Plaintiffs demonstrate that the requirements of Rule 801(d)(1)(B) have been met[4].

### Defendants' Motion In Limine to Exclude Evidence Relating to Specific Traffic Stops Other Than Those Involving Plaintiffs

■ Defendants seek exclusion of evidence relating to traffic stops other than the two stops in which the named Plaintiffs were

---

**3.** Of course, the Court's authenticity ruling depends on Forrest giving trial testimony concerning the document consistent with his deposition testimony.

**4.** The Court determines that the prejudicial effect of Long's testimony does not substantially outweigh its probative value. Hence, it will not be excluded pursuant to Fed.R.Evid. 403.

involved. Defendants contend such evidence is improper character evidence for the reason that Plaintiffs cannot show that the circumstances surrounding any particular traffic stop reflect Defendants' routine practice. Defendants also object on general relevancy grounds, arguing that evidence of other traffic stops is not relevant to the issue of whether the constitutional rights of the particular plaintiffs in this suit were violated. Finally, Defendants contend that the prejudicial effect of such evidence substantially outweighs its probative value. Plaintiffs respond that the matters sought to be excluded are admissible as "pattern and practice" evidence, and that the evidence is not unfairly prejudicial.

The specific evidence Defendants seek to exclude falls into two categories: (1) videotapes of 89[5] traffic stops made by members of the SET unit, and (2) testimony of Daytona Beach Police Officer Robert Rhoulhac and Sgt. Michael McGuire concerning their observations of VCSO units operating on I-95 one evening in 1992.[6]

The Court determines that the videotapes and the testimony of the Daytona Beach officers may be relevant to the question of whether the Defendants had a custom or policy of targeting Blacks and Hispanics for pretextual traffic stops. Moreover, the Court is not convinced on the present record that this evidence is unfairly prejudicial, such that it should be excluded pursuant to Fed. R.Evid. 403. Accordingly, insofar as it seeks a pretrial exclusionary ruling, the instant Motion will be denied.

### Conclusion

Based on the foregoing, it is ORDERED as follows:

1. Defendants' Motion In Limine With Respect to the Testimony of Francisco Muriel (Dkt. 162) is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as it seeks a pretrial ruling that Muriel's testimony about psychological injury he allegedly suffered is inadmissible at trial. The Motion is DENIED insofar as it seeks a pretrial ruling that Muriel may not testify at trial concerning the second traffic stop.

2. Defendants' Motion In Limine With Respect to Certain Testimony Regarding Alleged Brutality, Racial Slurs/Jokes, and Photographs of Alleged Victims (Dkt. 163) is DENIED insofar as it seeks a pretrial exclusionary ruling.

3. Defendants' Motion In Limine With Respect to Certain Testimony of Witness Donald McCormick (Dkt. 165) is DENIED.

4. Defendants' Motion In Limine With Respect to Certain Testimony, Documents, and Caricature Pertaining to Common Characteristics of Drug Couriers (Dkt. 166) is DENIED.

5. Defendants' Motion In Limine With Respect to Certain Testimony of Witness William Long (Dkt. 168) is GRANTED. The subject testimony will not be admitted at trial unless Plaintiffs demonstrate that the requirements of Rule 801(d)(1)(B) have been satisfied.

6. Defendants' Motion In Limine to Exclude Evidence Relating to Specific Traffic Stops Other Than Those Involving Plaintiffs (Dkt. 170) is DENIED insofar as it seeks a pretrial ruling excluding the videotapes of other traffic stops and the testimony of Daytona Beach Police Officer Rhoulhac and Sgt. McGuire.

DONE AND ORDERED.

---

5. Defendants' Motion states that the tapes reflect 94 traffic stops. Plaintiffs' Response indicates that the tapes show 89 stops. Though unexplained, this discrepancy is not material to resolution of the Motion. For present purposes, the Court will assume that the tapes depict 89 stops.

6. Defendants also seek exclusion of certain testimony of Patricia Barabas, Dale Anderson and Lawrence Wynn. However, Plaintiffs state they will introduce such testimony only as rebuttal evidence, if at all. In light of these representations, Defendants' motion is premature insofar as it relates to these witnesses. The Court will revisit the issue in the event these witnesses are called in rebuttal.