698 A.2d 1145

Kevin Earl LUCAS

v.

STATE of Maryland.

No. 1456, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Aug. 28, 1997.

Joy L. Phillips, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, David Taube, Staff Attorney, Baltimore, and Sandra A. O'Connor, State's Attorney for Baltimore County, Towson, on the brief), for Appellee.

Submitted Before WENNER, J., and JAMES S. GETTY and JOHN J. GARRITY, Judges (retired), Specially Assigned.

WENNER, Judge.

Appellant, Kevin Earl Lucas, was convicted by a jury in the Circuit Court for Baltimore County of possession of cocaine with intent to distribute and several related offenses. After merging appellant's convictions for the related offenses with his conviction for possession of cocaine with intent to distribute, sentence was imposed, and this appeal followed. On appeal, appellant complains that the trial judge

1.  incorrectly instructed the jury defining the crime of possession of cocaine, in failing to inform the jury that in order to convict appellant it was necessary for them to find that he knew that what he possessed was illicit;

2.  gave the jury an incomplete instruction concerning circumstantial evidence; and,

3. erred in admitting the "trophy photographs" into evidence.

Although we agree that the trial court erred in instructing the jury regarding the knowledge necessary to convict for possession of cocaine, it was harmless error. As we believe appellant's remaining complaints are without merit, we shall affirm the judgments of the circuit court.

## FACTS

In October 1994, the Baltimore County Police Department began an investigation of appellant and his brother, Michael. The Lucases were suspected of being drug dealers. The officers learned that, although he resided in another location, appellant frequently visited an apartment at 6319 Monica Place in Baltimore County, which they found was leased by Michael Lucas, and determined it to be a "stash house." According to the State's expert witness, a stash house is used by mid-level drug dealers to store, process, and package drugs for distribution. Generally, drug dealers do not sell their products from, nor do they permit customers to consume drugs at stash houses. The location of a stash house is kept secret from family and friends, and is generally known only to an "elite few" in any given drug organization.

The police began surveilling the Monica Place apartment in April 1995. The surveillance team consisted of officers who visited the area periodically, and watched the apartment. Detective Griffin, one of the officers who participated in the surveillance, testified that he visited the Monica Place apartment on a number of occasions, and that he saw appellant there on seven or eight of these occasions. Detective Griffin observed that, upon visiting the Monica Place apartment, appellant seemed always to follow a similar pattern of behavior. Appellant would arrive at and enter the apartment. A few minutes later, Michael would arrive. They would remain in the apartment for twenty to thirty minutes, then leave.

Eventually, the police gathered sufficient information to obtain a search warrant for the apartment. On 23 May 1995,

Detective Griffin and a search team went to the Monica Place apartment to execute the warrant. After surveilling the apartment for a period of time, appellant and a second man arrived. Although the officers had not seen him previously, the second man was later identified as Donald Page. Page was carrying a brown paper bag. Appellant was empty-handed. The two men entered the apartment.

After the search team had waited for about an hour, and no one else arrived, they entered the apartment to execute the search warrant. Upon entering the apartment, the search team set off a type of firecracker known as a flash bang, which makes a bright light. Its purpose is to stun the occupants for a few seconds, providing the entering officers sufficient time to gain control of the premises. Donald Page attempted to escape through a plate glass window. Unfortunately for Page, he was apprehended by one of the officers stationed outside the apartment. Page was injured and transported to a local hospital for treatment. Nevertheless, Page subsequently escaped and was apparently unavailable for appellant's trial. Appellant made no effort to leave the apartment, and was quickly apprehended. After apprehending appellant, the search team first noticed that his hands were covered with cocaine powder. During the search incident to his arrest, a set of keys was found on appellant. One of them was for the lock to the Monica Place apartment.

During a thorough search of the apartment, the officers found a bathroom toilet that had just been flushed and was still running. Powdered cocaine was found on the toilet seat. The officers also searched the kitchen and found the garbage disposal unit to be running. When they peered inside the garbage disposal unit, they found a large piece of crack cocaine. Also found in the kitchen was a set of scales, valued at approximately $150, wet paper towels, baking soda, benzocaine (a cutting agent), and a microwave oven. The microwave oven had been turned off with 33 seconds remaining on the display, and a white powdery substance inside. In addition, the officers found plastic baggies containing cocaine residue. All of these items indicated to the search team that,

at the time they entered the apartment, powdered cocaine was being processed into crack cocaine.

Appellant was placed under arrest and charged with possession of cocaine, possession of cocaine with intent to distribute, conspiracy with Michael Lucas, his brother, to possess cocaine, and conspiracy to possess cocaine with the intent to distribute. In September 1996, after a jury found appellant guilty on all counts, he was sentenced to term of 20 years, with all but 10 years suspended, followed by 3 years supervised probation upon his release.[1]

Although appellant did not testify at trial, defense counsel's closing argument outlined appellant's version of the incident. According to defense counsel, appellant was aware that his brother was a drug dealer, but appellant was not involved. Although defense counsel conceded that appellant used drugs, he averred that appellant was at the apartment solely to purchase cocaine for his own use. He explained that appellant's hands were covered with cocaine powder because appellant was testing the product before purchasing it. Consequently, it was disputed whether appellant was merely at the apartment purchasing drugs, or whether appellant was at the apartment because he was actively engaged in selling drugs.

The State introduced evidence to show that appellant was a habitual visitor to the Monica Place apartment. First, as we have previously mentioned, Detective Griffin testified that, in his frequent visits to the apartment, appellant had been there on seven or eight occasions. Second, the State introduced evidence that the Monica Place apartment was a "stash house."[2] The State also introduced evidence that a number of personal items belonging to appellant were found in the

---

1. The sentencing court merged the remaining convictions and imposed a sentence for possession of cocaine with intent to distribute.

2. This was accomplished by introducing evidence that, in the course of searching the apartment, the search team found drug processing equipment, but: (1) no food; (2) no drug consuming equipment; and (3) no indication that anyone lived or even stayed at the apartment on a regular basis.

apartment. These items included a sales receipt, a letter addressed to appellant, some of appellant's school papers, and photographs, referred to by the State as "trophy photographs." We will later explain these trophy photographs in greater detail.

After being convicted and sentenced, appellant noted this appeal.

### I. Jury instruction on Possession of a Controlled Dangerous Substance

Initially, appellant contends the trial judge erred in instructing the jury on the definition of the crime of possession of cocaine. At the close of the trial, the trial judge instructed the jury on this matter by telling them:

> You are further instructed that possession means the act or condition of knowingly having on one's person or taking into or having under one's control. Possession need not be immediate and direct, but may be constructive or indirect. Possession may be by one person or there may be joint possession by others. The duration of the possession and the quantity possessed are not material for the State to prove ownership in the sense of title in order to prove possession. A defendant not in actual direct possession of a substance who knowingly has both power and the intention to exercise some control over the substance, either personally or through another person, has indirect possession.

Defense counsel objected on the grounds that the instruction was incomplete because "knowledge," as defined in *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988), was not explained. In *Dawkins*, the Court of Appeals held that in order to convict an accused of possession of a controlled dangerous substance, the State must prove three things: (1) the substance was a controlled dangerous substance, (2) the accused had knowledge of the presence of the substance, and (3) the accused had knowledge of the "general character or illicit nature of the substance." *Id.* at 651, 547 A.2d 1041. Although the instruction complained of covered the first two requirements, it did not cover the third, knowledge of the

substance's illicit nature. Accordingly, we must now determine whether this omission is fatal.

"A trial judge is required to give a requested instruction which correctly states the applicable law and which has not been fairly covered in instructions actually given...." *Lansdowne v. State*, 287 Md. 232, 239, 412 A.2d 88 (1980); Md. Rule 4–325. On the other hand, a trial judge is not required to instruct a jury on matters not generated by the evidence. *Hemingway v. State*, 76 Md.App. 127, 138, 543 A.2d 879 (1988). In the case at hand, there was no question that appellant knew that what he possessed was illicit, because defense counsel told the jury that appellant was in the apartment to purchase cocaine, and that when he heard the police entering, he "grabbed what he could, he tossed it, and sat in the bedroom and waited." Appellant's version of the incident is that he had cocaine powder on his hands because he was testing it before deciding whether to purchase it. In fact, defense counsel conceded in his closing argument to the jury that "possession is what he ought to be found guilty of; nothing more, but nothing less." As it is thus obvious that appellant knew that the powdered substance found on his hands and throughout the apartment was cocaine, the trial court's failure to include the element of knowledge in the definition of possession of cocaine does not constitute reversible error. *See California v. Horton*, 163 Cal.App.2d 63, 328 P.2d 783 (1958); *Bieber v. State*, 8 Md.App. 522, 261 A.2d 202 (1970); *Illinois v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1 (1973).

## II. Jury Instructions regarding circumstantial evidence.

Appellant also claims the trial court erred in instructing the jury concerning circumstantial evidence. In this regard, the trial court gave the following instruction:

Any person who is accused of a crime comes into court with a presumption of innocence and that presumption remains with him throughout the trial.... *Unless the prosecution has proven the accused guilty beyond a reasonable doubt based upon the legal evidence presented in this case, the*

*presumption of innocence alone is sufficient to acquit the accused.*

\* \* \*

Now, there are two types of evidence which you the jury may consider in this case. There is direct evidence and circumstantial evidence. Direct evidence is ... [and] circumstantial evidence is.... Circumstantial evidence may be used to prove any element of the crime, including the criminal agency of the accused. Thus, a conviction may rest on circumstantial evidence alone, or on direct evidence alone, or on a combination of circumstantial and direct evidence. No greater degree of certainty is required when the evidence is circumstantial than when it is direct provided you, the jury, are convinced on the basis of all the evidence presented beyond a reasonable doubt of the guilt of the Defendant, *and if you are not so convinced you must find the Defendant not guilty.* (Emphasis added.)

Appellant excepted to this instruction, and asked the trial court to give the following instruction, which he had submitted:

A conviction may be based solely on circumstantial evidence, but only when the circumstances, taken together, are inconsistent with or such as to exclude every reasonable hypothesis or theory of innocence. Thus, while a conviction may rest on direct or circumstantial evidence alone, or a combination of both, the accused is entitled to every favorable inference from the evidence.[3]

As we will explain, we conclude that the trial court correctly instructed the jury.

According to appellant, *Hebron v. State,* 331 Md. 219, 224, 627 A.2d 1029 (1993), requires reversal in the case *sub judice.*

---

**3.** On appeal, appellant also complains that the trial judge erred in not instructing the jury that just as circumstantial evidence may be used to convict, it may also be used to acquit. We note, however, that this has not been preserved for our review.

In *Hebron*, the defendant requested an instruction similar to that sought by appellant. The instruction requested by appellant included that if all the circumstances taken together did not exclude every theory of innocence the jury should acquit him. The defendant in *Hebron* requested that the jury be instructed, "[i]f you can draw more than one reasonable inference from the circumstantial evidence, the [defendant] must be found not guilty." *Id.* at 222, 627 A.2d 1029. The Court of Appeals said that such an instruction essentially instructs "the jury to perform a function not entrusted to it and, indeed, to encourage it to perform such function." *Id.* at 234, 627 A.2d 1029. The *Hebron* Court held that "where the defendant posits that the State's evidence consists of a single strand of circumstantial evidence that is not inconsistent with a reasonable hypothesis of innocence, he is effectively charging that the evidence is legally insufficient", and this is to be decided by the trial court in a motion for judgment of acquittal. "If the motion is denied, the court must instruct on reasonable doubt, but should not supplement that instruction with any special focus on hypotheses arising from circumstantial evidence." *Id.* at 224, 627 A.2d 1029 (quoting *Hebron v. State,* 92 Md.App. 508, 519–20, 608 A.2d 1291 (1992), *aff'd,* 331 Md. 219, 627 A.2d 1029).

Nonetheless, we find no error. We agree with the United States Supreme Court in *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), that "where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect[.]" Upon reviewing the entire instruction, especially that which we have underlined, we believe the trial court correctly instructed the jury.

### III. Admission of the Trophy Photographs

Appellant next contends the trial court erred in admitting the so-called "trophy photographs" into evidence. As we said earlier, two sets of photographs were contested on appeal. The first are virtually identical. They are photographs of appellant and an unidentified male kneeling before stacks of

money and a backdrop that appears to contain large illustrations of twenty and one hundred dollar bills. When questioned, appellant concedes that the photographs were taken by a professional. The third and fourth are of appellant and a group, including his brother, posing in and around two expensive sports cars. One of the cars was determined to be owned by appellant. These photographs were found in one of the apartment's bedrooms.

The photographs were introduced by the State for two reasons. First, to establish appellant's continuing interest in the Monica Place apartment, and that he was not there simply to purchase drugs. The photographs, as well as the keys to the apartment found on appellant, helped establish appellant's connection to the apartment, particularly to the bedroom in which they were found. Second, the State's narcotics expert testified that such photographs were of the kind referred to as "trophy photographs," typically found in possession of mid-level drug dealers to demonstrate their success. Such photographs are often used to encourage lower level drug dealers to work with them. The expert's opinion, was based on the content of the photographs, as well as that they were found in a "stash house." Appellant points out that the admission of these photographs, together with the expert's opinion, suggests that appellant was involved in distributing drugs, and that this prejudiced his defense. Appellant goes on to present three reasons why he believes the "trophy photographs" and the related expert testimony should have been excluded: (1) the expert witness's testimony invaded the province of the jury, (2)the "trophy photographs" were irrelevant, and (3) the money should have been redacted from the "trophy photographs."

We will first address the admissibility of the photographs, then the admissibility of the expert's testimony.

### Photographs as Evidence of Appellant's Connection to the Apartment

Typically, photographs are introduced to "clarify and communicate facts to the tribunal more accurately than by

mere words." *Johnson v. State,* 303 Md. 487, 503–504, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). Here, however, the "trophy photographs" presented circumstantial evidence that appellant was not merely a casual visitor to the Monica Place apartment.

With this distinction in mind, the appropriate question is whether the "trophy photographs" were admissible as evidence of appellant's connection to the stash house. *Banks v. State,* 84 Md.App. 582, 581 A.2d 439 (1990), involved a similar situation. In *Banks,* after an undercover police officer purchased cocaine from Banks, the undercover officer provided another officer with Bank's description. The second officer recognized the description and exhibited two photographs of Banks to the undercover officer. The photographs were of a man holding a small handgun, one of the man admiring the small handgun in the palm of his hand, and the other of the man exhibiting the small handgun in an offensive manner. The trial court admitted these photographs into evidence for the purpose of showing how the undercover officer had identified Banks. We held that the photographs were unfairly prejudicial and should not have been admitted. Consequently, we must test the admissibility of the "trophy photographs" under the law applied in *Banks.*

It is well settled that '[t]he real test of admissibility of evidence in a criminal case is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.' Evidence is relevant and hence, admissible, if it tends either to establish or disprove the issue in dispute. On the other hand, 'Evidence which is ... not probative of the proposition at which it is directed is deemed 'irrelevant.'' In *Pearson [v. State,* 182 Md. 1, 13, 31 A.2d 624 (1943)], the Court of Appeals explained the rationale for excluding irrelevant evidence:

Evidence of collateral facts, or of those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be excluded, for the reason that such evidence tends to

divert the minds of the jury from the real point in issue, and may arouse their prejudices.

Such evidence may '[tend] to substantiate the witness on an immaterial point ... and to correspondingly discredit the defendant as to his credibility on the main issue.'

*Banks*, 84 Md.App. at 589–90, 581 A.2d 439 (quoting *Pearson v. State, supra*, and *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976)) (other citations omitted). The *Banks* Court found the photographs of Banks exhibiting a small handgun were of minimal relevance, and because of the common association of firearms with the drug culture, the photographs were extremely prejudicial, and should have been excluded.[4]

In the case at hand, the trial court admitted the photographs as probative of appellant's connection to the stash house. Appellant's primary response was that he was merely at the stash house to purchase crack cocaine, rather than to engage in its processing and distribution. As we have said, "[e]vidence is relevant and hence, admissible, if it tends either to establish or disprove the issue in dispute." *Banks*, 84 Md.App. at 589, 581 A.2d 439; Md. Rule 5–402. Appellant's connection to the stash house was critical to the State's establishing that appellant was involved in processing and distributing crack cocaine, not merely purchasing it. Such was not an irrelevant collateral fact "incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute." *Id.* at 590, 581 A.2d 439 (quoting *Pearson*, 182 Md. at 13, 31 A.2d 624). Instead, that the "trophy photographs" were found in a Monica Place apartment's bedroom affords the jury an inference that appellant had more than a casual connection to the apartment. We

---

4.  Because handguns and the distribution of cocaine, or other narcotics, go together, or at least are equated together, we reject the State's argument that the photographs are not prejudicial. On the contrary, we hold that they are extremely so. And, when one considers the State's concession that they have but minimal relevance, it follows that their probative value is also low. That being so, it further follows that their prejudicial effect far outweighed their relevance, hence, their probative value.
    *Banks*, 84 Md.App. at 592, 581 A.2d 439.

conclude that the trial court did not abuse its discretion in determining that the "trophy photographs" were relevant and probative.

■ Appellant claims that even if found to be relevant, their probative value was substantially outweighed by their unfair prejudice. Appellant primarily makes this contention with respect to the two practically identical photographs of appellant and another man, with money spread out on the floor in front of them against a backdrop of money. As appellant sees it, because money is frequently associated with the drug culture, by viewing the money, the jury may have deduced that he was actively involved in the drug culture.

The balancing of the probative value of "trophy photographs" against their prejudice to appellant's defense is "committed to the trial judge's sound discretion." *Bedford v. State,* 317 Md. 659, 676, 566 A.2d 111 (1989). The Court of Appeals has "consistently held that whether or not a photograph is of practical value in a case and admissible at trial is a matter left to the sound discretion of the trial judge.... A Court's determination in this area will not be disturbed unless plainly arbitrary." *Johnson v. State,* 303 Md. 487, 502, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *see* Md. Rule 5–403; *State v. Broberg,* 342 Md. 544, 555, 677 A.2d 602 (1996); *Price v. State,* 82 Md.App. 210, 222, 570 A.2d 887 (1990).

Although we recognize that the photographs taken of appellant and another man with money spread before them could induce jurors to infer the money was obtained from distributing cocaine, such an inference could be induced not only from the photographs. We believe this situation to be distinguishable from *Banks,* in which we held that photographs of Banks displaying a handgun were extremely prejudicial, 84 Md.App. at 592, 581 A.2d 439, particularly in view of "the State's concession that they have but minimal relevance...." *Id.* at 592, 581 A.2d 439. Although the photographs of appellant with expensive cars and an array of cash may be somewhat prejudicial, we do not believe the trial court abused its discre-

tion in concluding that such photographs were not *unfairly* prejudicial.

■ Appellant presents another reason for excluding the "trophy photographs." He contends that, as the State established that he was a consistent visitor to the Monica Place apartment by introducing his personal papers found there, the "trophy photographs" were unnecessary and redundant, and therefore irrelevant. Again, we disagree.

"[P]hotographs need not possess 'essential evidentiary value' to be admissible." *Id.* (quoting *Bedford,* 317 Md. at 677, 566 A.2d 111).[5] Even assuming that the "trophy photographs" were redundant, there was no impropriety. The State is obligated to present sufficient evidence to convince the jury of appellant's guilt. Because it bears this burden, the State may occasionally present redundant evidence. *Anaweck v. State,* 63 Md.App. 239, 247, 492 A.2d 658, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985) ("When the State sufficiently satisfies its initial burden of production, its real task is not finished, but only begun."). Although photographs may often be cumulative in the sense that they provide the fact finder with an alternative form of information, the trial court has "discretion to determine whether this alternative form of information ... was wholly needless under the circumstances." *Broberg,* 342 Md. at 565, 677 A.2d 602 (citations omitted).

■ Finally, appellant contends that the trial court erred by failing to redact the money from the two photographs of him kneeling with another man in front of a great deal of money. Although defense counsel argued that its unfair prejudice substantially outweighed its probative value of the money shown in the photographs, the trial court disagreed. We believe the trial court properly declined to redact the

---

5. In *Bedford,* the appellant alleged that "where a photograph has only minimal significance, and no essential evidentiary value, the trial judge should be more inclined to exclude it if it is inflammatory." 317 Md. at 677, 566 A.2d 111. The Court of Appeals, however, ruled that Maryland has "not adopted such a test and require[s] only that the trial judge not abuse his discretion." *Id.*

money, and determined that the photographs were relevant and admitted them after weighing their probative value against their unfair prejudice to appellant. *State v. McCallum*, 321 Md. 451, 453, 583 A.2d 250 (1991); *Brashear v. State*, 90 Md.App. 709, 715, 603 A.2d 901, *cert. denied*, 327 Md. 523, 610 A.2d 796 and 328 Md. 92, 612 A.2d 1315 (1992). Such determinations are largely within the sound discretion of the trial court, and we find no abuse of discretion.

### Expert Testimony Concerning Trophy Photographs

As we said at the outset of this opinion, the disputed photographs were referred to by the State as "trophy photographs." Detective Taylor of the Baltimore County Police Department testified that the photographs at issue were, in his expert opinion, "trophy photographs." Detective Taylor has been employed for seventeen and a half years in the narcotics section of the Baltimore City Police Department and appellant and the State agreed that Taylor was an expert in the field of CDS use, packaging, and distribution. Detective Taylor estimated he has been involved in approximately one thousand narcotics investigations, and has made hundreds of narcotics arrests.

Taylor testified that he reviewed the evidence collected from the search of the Monica Place apartment and arrived at several conclusions. First, that the apartment was a "stash house," which he described as used by mid-level drug dealers to avoid detection by the police who typically first investigate a suspect's residence. A "stash house" provides a dealer with insulation from other dealers and users, as well as a place to secrete the illegal business from the dealer's family. According to Detective Taylor, the location of the "stash house" is usually known only by those "high up" in the drug organization. For a number of reasons, Detective Taylor concluded that the Monica Place apartment was a "stash house": the substantial amount of cocaine and crack cocaine found there, the ingredients and equipment needed to process crack cocaine, and the lack of food or personal items found in the apartment.

Appellant vehemently contests the second conclusion drawn by Detective Taylor. The detective concluded that the photographs found in the bedroom attributed to appellant were of the type "commonly seized in drug investigations" and are referred to as "trophy photographs." Over objection, Detective Taylor explained that such photographs are like "a trophy for the individual involved. It [marks] a significant event in the life.... [T]hey have reached a significant point in their drug distribution network that they are proud of what they accomplished and they have photographs taken and keep the photographs as a reminder. What we find often is the other people who are photographed with them are significant players in the organization.... They are a partner or higher up in the organization." At this point, defense counsel's objection was sustained. The questioning continued, however, without the "trophy photographs" being stricken.

The detective went on to point out that, although illegal, drug distribution is a business. Drug dealers, just as those in other businesses, must publicize their successes. In other words, they wish to publicize their success, not only for personal gratification, but to encourage new workers and additional business. In the world of legitimate business, there are many means available for those who are successful to acquire recognition, such as advertising, winning awards, and participating in civic activities. Such means, however, are not available to drug dealers. Unable to acquire publicity by conventional means, drug dealers have developed other means of meeting their need for recognition. According to Detective Taylor, a "trophy photograph" is a photograph of a drug dealer posing with one or more valuable objects, to demonstrate that the individual or individuals photographed has/have achieved financial success. Such photographs are for the purpose of impressing their peers, and to induce prospective employees and customers. Detective Taylor says that mid-level drug dealers routinely possess "trophy photographs."

Detective Taylor concluded that the photographs in question were "trophy photographs," because each one displayed at least one object of great value, of which the person posing

with them could be proud. The contested photographs are of appellant with stacks of money and expensive sports cars. Another factor by which Detective Taylor concluded these were "trophy photographs" is that there were no other photographs at the Monica Place apartment, other than those entered into evidence. Despite appellant not living at the apartment, there were several such photographs of him found there. Detective Taylor testified that keeping these photographs separate from family photographs is consistent with the idea of maintaining a "stash house" to keep a dealer's drug operation separate from the dealer's personal home. Taylor arrived at this conclusion without knowing when or by whom the photographs were taken.

On appeal, appellant contends that Detective Taylor's testimony unfairly delved into the ultimate question which is solely within the province of the jury.

We have neither discovered nor been directed to any published opinions addressing the issue of "trophy photographs" in narcotics investigations. Although we have found numerous references to "trophies" found in the possession of murderers and rapists, we have not found such references to photographs used by drug dealers to advertise their success in the narcotics business. It appears that in cases involving murder or rape such trophies or souvenirs are admissible, together with testimony that the items appear to be trophies if there are facts sufficient to support that opinion. Many jurisdictions refer to such items as trophies without disputing their admissibility. *See State v. Worl,* 58 Wash.App. 443, 794 P.2d 31 (1990), *reversed on other grounds,* 129 Wash.2d 416, 918 P.2d 905 (1996) (allowing appellant's sentence to be increased due to his "deliberate cruelty" as demonstrated by his taking of the victim's property as if they were trophies of the crime); *Fulghum v. Ford,* 850 F.2d 1529, 1531 (11th Cir.1988), *cert. denied,* 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989) (Defendant's severed finger was a trophy of his successful battle against Satan.); *Massey v. State,* 933 S.W.2d 141, 148 (Tex.Crim.App.1996) (an affidavit, which among other things, indicated that appellant was known to keep the heads of cats

and dogs in a cooler by his home as trophies, justified a search of the area.).[6]

Title 5, Chapter 700, of the Maryland Rules governs the admissibility of expert testimony. Rule 2–702 permits admission of expert testimony

> in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on a particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

In the instant case, that Detective Taylor is an expert in the field of the distribution of narcotics is conceded. At the time of appellant's trial, Taylor had more than seventeen years experience in the narcotics section of the Baltimore County Police Department, during which he attended, as well as taught, many narcotics related training courses. Thus, Detective Taylor's qualifications clearly enabled him to testify as to the nature of the items found in the Monica Place apartment. Further, as we have detailed above, Detective Taylor had a sufficient factual basis to support his conclusion that the photographs found in the apartment were "trophy photographs." The only challenge is whether the State has met Rule 5–702's requirement that it was appropriate for Detective Taylor to classify the photographs as "trophy photographs."

---

6. We note that a similar issue was raised in *Washington v. Vogel*, 880 F.Supp. 1534, 1536–37 (M.D.Fla.1995); however, the issue was not decided. In *Vogel*, the plaintiffs claimed to be the victims of brutality by the local sheriff's department, and sought to introduce photographs, which they claimed were displayed at the sheriff's headquarters as "war trophies" of the victims of their beatings. Because the issue was not adequately briefed, the Court declined to decide the "relevancy and prejudicial effect" of the evidence. We will consider these same issues in deciding the admissibility of the testimony concerning the purported trophy photographs.

To determine the appropriateness of Taylor's testimony pursuant to Rule 5–702, we must decide whether (1) the testimony is relevant, and (2) whether its probative value substantially outweighs the danger of unfair prejudice to appellant. *See Simmons v. State*, 313 Md. 33, 41, 542 A.2d 1258 (1988). Expert testimony is relevant if "the jury will receive appreciable help from the expert testimony in resolving the issues in the case." *Id.; Cook v. State*, 84 Md.App. 122, 138, 578 A.2d 283 (1990); *see* Md. Rule 5–401.

Although appellant contends that Detective Taylor's testimony should have been excluded as it embraced an ultimate issue to be decided by the jury, "an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." Rule 5–704(a). A trial judge has wide discretion in determining the admissibility of expert testimony. Such decisions "rarely constitute[ ] a basis of reversal." *Cook*, 84 Md.App. at 138, 578 A.2d 283. On appeal, the admission or rejection of such evidence "may be reversed if it is founded on an error of law or if the trial court clearly abused its discretion." *Id.* Here, appellant does not contend that the trial court legally erred by allowing Detective Taylor to give his expert opinion concerning the "trophy photographs." Consequently, our review is limited to determining whether the trial court abused its discretion by allowing such testimony.

"Abuse of discretion may be found where the probative value of admitted testimony is outweighed by prejudice. Prejudice, in the evidentiary sense, that can outweigh probative value involves more than mere damage to the opponent's case." *Cook*, 84 Md.App. at 138, 578 A.2d 283 (quoting *State v. Allewalt*, 308 Md. 89, 102, 517 A.2d 741 (1986)); Md. Rule 5–403.

Appellant believes that *Cook v. State, supra*, is dispositive. In *Cook*, a police officer, who qualified as an expert in drug dealing and operations, opined as to the role he believed each defendant played in the drug organization. According to the officer, one of the defendants was the head of the drug

organization and another defendant was one of the drug distributors. On appeal, we said "Weighing usefulness to the jury of Officer Trogdon's opinions as to appellants' roles in the drug operation against the prejudice to appellants, we conclude that the prejudice so outweighed the usefulness that the admission of the opinion constituted an abuse of discretion." 84 Md.App. at 142, 578 A.2d 283.

In *Cook*, we made clear that, in most instances, it is appropriate for an expert to

testify that a certain pattern of conduct or the presence of certain factors is often found in a particular criminal enterprise, leaving it to the jury to apply that expertise to the facts of the case. As to some matters, on the other hand, it may be necessary for the expert to express his opinion on the ultimate fact in issue in such a manner as to come close to an encroachment on the jury's function to resolve contested facts in order for the jury to get the benefit of the expert's knowledge, where such knowledge is necessary for an understanding of the facts and cannot reasonably be imparted in a less prejudicial manner.

84 Md.App. at 142, 578 A.2d 283. We concluded in *Cook* that there were insufficient facts to support the officer's conclusion as to the defendants' roles in the drug organization. Without an adequate basis of facts, such an opinion is inadmissible.

In sum, we do not believe that *Cook* is dispositive. Detective Taylor described a typical "trophy photograph," why such photographs are normally taken, and who normally keeps such photographs. This information is not within the common knowledge of the vast majority of jurors, and is therefore of value to the jurors' understanding of these photographs. Detective Taylor's expert opinion that drug dealers often keep "trophy photographs" and that photographs resembling "trophy photographs" were found in the Monica Place apartment was relevant to convicting appellant of the offenses charged. Although Detective Taylor testified that mid-level dealers are typically found with "trophy photographs," he went no further. He did not opine that because appellant had "trophy photo-

graphs" he was a dealer. Moreover, Detective Taylor did not attempt to identify the other persons in the photographs. We agree with the trial court that Detective Taylor's testimony was not unfairly prejudicial. Defense counsel had ample opportunity to discredit Detective Taylor's conclusions by cross-examining Taylor concerning the possible innocence of such photographs, and that Taylor did not know who took the photographs or when they were taken. We hold that the detective's testimony explaining the concept of "trophy photographs" was relevant and did not invade the fact finding role of the jury. Accordingly, the trial court did not err in admitting this testimony.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**